**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **THE SABINE MINING COMPANY** § | | |
| § | | |
| **V.** § | **CIVIL ACTION NO. 6:05-CV-478** | |
| § | | |
| **MINSERCO, INC.** § | | |
| § | | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On September 28, 2006, the Court issued an order denying without prejudice Defendant Minserco, Inc.'s Motion for Summary Judgment (Doc. No. 10) and Plaintiff The Sabine Mining Company's Motion for Partial Summary Judgment (Doc. No. 11). Having reconsidered the aforementioned motions, the competent summary judgment evidence and the applicable law, the Court hereby withdraws its September 28, 2006, Order (Doc. No. 21) as improvidently decided and hereby DENIES Defendant's motion in all things and GRANTS Plaintiff's motion in all things.

I.   Background

On March 22, 1999, The Sabine Mining Company ("Sabine") entered into a document entitled Intermittent Work Contract (the "Contract") with Minserco, Inc. ("Minserco") wherein Minserco would provide employees and equipment to

perform work at Sabine's premises. One of the hourly employees Minserco sent to work at Sabine's premises was Tony L. Broome ("Broome"). On May 3, 2004, Broome was severely injured while working on Sabine's premises. According to Minserco, Broome was unable to sue Minserco due to the exclusive remedy statute covered by The Texas Worker's Compensation Act. Broome instead sued Sabine in a Harrison County court alleging negligence, among other things, for the injuries he sustained. Sabine filed a third-party petition against Minserco alleging contractual indemnity, contribution and negligence. Prior to the trial and after Minserco filed a motion for summary judgment, Sabine settled the lawsuit with Broome for $1,245,000 and non-suited their claims against Minserco.

On November 17, 2005, Sabine filed a petition for declaratory judgment in Gregg County, Texas alleging that it was entitled to contractual contribution and/or indemnity from Minserco pursuant to the Contract "on account of the negligence or other culpable conduct of [Minserco] by [its] acts and/or omissions..." In its petition, Sabine stated that Minserco was negligent through "its agents, representatives, and/or employees" and that such negligence was "a proximate cause, or in the alternative the sole proximate cause, of the damages and injuries complained of by Tony L. Broome..." These negligent acts included Minserco's alleged negligent training of its employees, lack of supervision of its

employees, and provision of faulty equipment to its employees.

On December 15, 2005, Minserco removed the case to this court. On February 2, 2006, Minserco filed a motion for summary judgment asking the Court to find as a matter of law that it is not liable for any part of the settlement Sabine paid to Broome. Sabine responded and filed its own motion for partial summary judgment on March 7, 2006, urging the Court to find that it is entitled to contractual indemnity from Minserco for some or all of the settlement Sabine paid to Broome. Sabine argued that the proportionate amount of Minserco's liability could be decided by a jury. Alternatively, Sabine argued that Minserco waived any defense defeating the indemnification agreements in the Contract through a waiver provision in the Contract. On May 4, 2006, Sabine filed an amended complaint for declaratory judgment against Minserco, the only difference being that Sabine specifically stated that the controversy amount was over $75,000.

II.   Summary Judgment Standard

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The

Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment, the movant, "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (an banc) (quoting *Celotex*, 477 U.S. at 323-25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Products, Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to

interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 249-51; *Texas Instruments*, 100 F.3d at 1179.

III. <u>Discussion</u>

    A. Contractual Indemnity/Contractual Contribution

Sabine does not argue that it is entitled to recover from Minserco under common-law or statutory contribution rights. Such claims would be precluded under *Beech Aircraft Corp. v. Jinkins,* 739 S.W.2d 19 (Tex. 1987), which held that

> [a] settling defendant who is jointly responsible for personal injuries to a common plaintiff may not preserve contribution rights either by obtaining a complete release for all other parties allegedly responsible or by obtaining assignment of the plaintiff's entire claim.

*Id.* This is because under Texas law, a joint tortfeasor can only settle its proportionate share of a common plaintiff's cause of action. *Id.* at 22; *see also International Proteins Corp. v. Ralston-Purina Co.* 744 S.W.2d 932 (Tex. 1988). Instead, Sabine argues that it is entitled to judgment as a matter of law under the Contract with Minserco, whether its referred to as "contractual indemnity" or "contractual contribution" from Minserco. Sabine points to the Contract, which states that Minserco agrees to "indemnify and save harmless Company [Sabine] from any and all claims, liability, damage or loss to persons or property arising out of or in any way connected with the performance of this Contract, to the extent any

of the forgoing is caused by Contractor's [Minserco's] negligence."[1]

---

[1] Paragraphs 7, 8 and 11 of the Contract contain the entirety of the indemnification provisions:

> 7. Contractor acknowledges it is an independent contractor and agrees to comply with all state and federal laws applicable to persons employed directly or indirectly by Contractor.  Contractor further agrees to maintain Workers' Compensation coverage applicable in the state where is work is being performed and to indemnify and hold harmless Company from any and all claims of Contractor's employees <u>other than the claims arising from the negligence or willful misconduct of the Company</u>.  Prior to beginning work, a Certificate of Insurance evidencing Worker's Compensation coverage shall be issued to Company, and said certificate shall provide for at least thirty (30) days notice of cancellation.  Company reserves the right to deem certain insurance companies unacceptable for these purposes at its sole reasonable discretion.
>
> 8. Contractor agrees to indemnify and save harmless Company from any and all claims, liability, damage or loss to persons or property arising out of or in any way connected with the performance of this Contract <u>to the extent any of the foregoing is caused by Contractor's negligence</u>.  Furthermore, Contractor shall indemnify and save harmless Company against all liability for personal injuries, including death resulting therefrom, and against all liability for property damages sustained by any other person or corporation whatsoever, caused or alleged to have been caused, directly or indirectly, by any act or omission on the part of Contractor, any of its subcontractors, or any of their employees and agents, resulting from or in any way connected with the performance of this Contract <u>to the extent any of the foregoing is caused by Contractor's negligence</u>.  Contractor agrees to carry Commercial General Liability Insurance, including contractual liability, products/completed operations, and personal injury, with limits of liability for bodily injury and property damage of not less than $500,000 per occurrence/$1,000,000 annual aggregate.  Contractor further agrees to carry Automobile Liability insurance with limits of liability for bodily injury and property damage of not less than $500,000 on a combined single limit basis.  Contractor shall not begin work until Contractor has furnished to Company a Certificate of Insurance, evidencing the insurance outlined above.  Said certificate(s) shall name Company as an Additional Insured <u>with respect to amounts for which Contractor is liable</u>, and the certificate(s) shall not be reduced or canceled until at least thirty (30) days after Company receives written notice of such change or cancellation.  Upon request, Contractor shall provide copies of its policies to Company.  All Insurance that Contractor is required to carry hereunder shall be provided by companies rated A or better by A.M. Best.

Minserco argues that since Sabine is only seeking indemnity for Minserco's own negligent acts, Sabine is in effect seeking comparative indemnity under the Contract and that therefore, the Contract must meet the express negligence test as stated in *Ethyl Corp. & Donald Metcalf, et ux v. Daniel Construction Co.,* 725 S.W.2d 705(Tex. 1987).  To support its assertion, Minserco quotes the *Ethyl* court, which states, "Indemnitees seeking indemnity for the consequences of their own negligence which proximately caused injury jointly and concurrently with the indemnitor's negligence must also meet the express negligence test." *Id.* at 708. However, Minserco misinterprets the applicability of *Ethyl* to the Contract in this case.  The *Ethyl* court applied the express negligence test for injuries caused jointly and concurrently by both the indemnitee and the indemnitor when the indemnitee sought indemnification not only for the indemnitor's negligence, but also for the indemnitee's own negligence.  In this case, Sabine (the indemnitee)

---

11. Contractor agrees to indemnify and hold harmless Company from and against all claims, damages, losses, demands, actions and causes of action, including the expense of defending the same asserted by any officer, employee, or invitee of Contractor or any subcontractor, or of anyone directly or indirectly employed by any of them, or on behalf of any deceased officer, employee or invitee of Contractor or any subcontractor or anyone directly or indirectly employed by any of them, and/or by anyone claiming by, through, or under such officer, employee, or invitee or deceased officer, employee, or invitee, growing out of the injury to, sickness, diseases, or death of such officer, employee or invitee, or the damage to or destruction of tangible property ~~including the loss of use resulting therefrom, except to the extent resulting from the sole negligence of Company~~ to the extent any of the foregoing is caused by Contractor's negligence.

only seeks indemnification from Minserco (the indemnitor) for injuries caused solely by Minserco's negligence.

In other words, the express negligence doctrine requires a party wishing to contractually shift risk from itself for the consequences of its future negligence to specifically express that intent within the four corners of the agreement. *See Lawrence v. CDB Services, Inc.*, 16 S.W.3d 35, 41-43 (Tex.App.-Amarillo 2000)(citing *Ethyl Corp.,* 725 S.W. 2d at 707-8*); see also Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). The Contract in this case contains no such risk-shifting. Therefore, the express negligence doctrine does not apply.

Although the indemnification provisions in the Contract do not fall under the express negligence doctrine, they still fail provide for the type of contribution Sabine seeks from Minserco, at least under the standard set by *Man GHH Logistics GMBH v. Emscor, Inc.*, 858 S.W.2d 41, 43-44 (Tex.App.– Houston [14th Dist.] 1993, no writ).

As in the instant case, the *Man* case, under a similar fact pattern, held that the express negligence doctrine did not apply to the indemnification provision. *Id.* at 43. However, it still held that the indemnification provision was not effective in establishing a claim for contractual contribution. *Id.* The *Man* court stated

>There is no agreement that appellees will reimburse appellants for any voluntary settlements made with any plaintiffs. The contract provision does not mention "contribution," and fails to discuss any apportionment of fault. The contract provision also fails to set forth any intent by the parties for a claim of reimbursement.

*Id.* The *Man* court also referenced the fact that, under Texas law, a party can only settle for its proportionate share of liability, noting that by paying a large settlement to the plaintiffs in the underlying case, "appellants have destroyed any forum for determining who was at fault." *Id.* At 44.

Sabine argues that the indemnification provisions in the Contract do discuss apportionment of fault by stating that Minserco will indemnify Sabine to the extent of Minserco's negligent conduct. This is a distinction that is not apparent in a comparison with the *Man* case. Clearly, the *Man* court felt that this was not the type of apportionment of fault required for contractual contribution. How an indemnification agreement can properly set out apportionment of fault in such a settlement situation is a matter yet to be considered under Texas law. However, this Court need not address the issue, because even if the indemnification provisions in the contract do not provide for the type of contribution Sabine seeks, Minserco signed a provision in the Contract waiving defenses that would defeat

the indemnification provisions.

      B.    Waiver

Sabine argues that a waiver clause in the Contract precludes Minserco from preventing Sabine from seeking indeminfication or contribution from Minserco. The parties do not argue that the waiver clause is ambiguous; instead, they argue whether or not it allows Minserco to bring a contractual defense against Sabine's claims. The Court must therefore determine the intent of the parties by examining the plain language of the waiver clause. *Allison v. Nation'l Union Fire Ins. Co.*, 734 S.W.2d 645, 646 (Tex. 1987)(citing *Ideal Lease Service, Inc. v. Amoco Production Co.*, 662 S.W.2d 951, 953 (Tex. 1983)).

Sabine state that Minserco "waived all defenses, both statutory and common law, to this lawsuit." Sabine points to Paragraph 9 of the Contract, which states

> 9. With respect to Company's indemnification rights hereunder, Contractor expressly waives all statutory or common-law defenses including but not limited to those under workers compensation, contribution, comparative fault or similar statutes or legal principles to the extent such defenses are inconsistent with or would defeat the

purpose of the indemnification provided herein.[2]

Minserco argues it does not bring its motion for summary judgment or its defense to Sabine's partial motion for summary judgment under common-law or statute. Minserco states that its arguments fall under contract interpretation, enforceability and application, and that nothing in the waiver prevents a contractual defense. Minserco is incorrect.

The waiver clause states that the "Contractor expressly waives all . . . common law defenses including but not limited to those under . . . contribution . . . or legal principles to the extent such defenses are inconsistent with or would defeat the purpose of the indemnification provided herein." A contractual defense to the kind of contribution Sabine seeks would certainly be considered a "legal principle" under the plain language of the waiver clause. Further, the intent of the parties was to eliminate any defenses that would "defeat the purpose of the indemnification" in the Contract. Minserco therefore clearly waived the contractual defenses it now asserts.

---

[2] The Court notes that Minserco does not assert that since Broome is barred from suing Minserco under the worker's compensation exclusivity provision, Sabine cannot sue Minserco for a claim that the original plaintiff himself could not have brought in the underlying suit. While this appears to be a logical defense, Minserco does not assert it due to this waiver, which states that Minserco "expressly waives all statutory or common-law defenses including but not limited to those under workers compensation . . ." Because Minserco does not, and possibly cannot, assert a defense under workers compensation, the Court does not reach this issue.

### IV. Conclusion

After careful review and consideration, and for the reasons stated above, the Court cannot find that Minserco is entitled to summary judgment.  However, the Court finds no genuine issue of material fact precluding the Court from granting summary judgment as to Sabine's claims.  Further, the Court sees no reason why a jury could not determine what, if any, percentage of Minserco's alleged negligence contributed to the damages resulting from Tony Broome's injuries.  It is therefore,

ORDERED, ADJUDGED, and DECREED that Defendant's Motion for Summary Judgment be, and hereby is, DENIED.  It is further,

ORDERED, ADJUDGED, and DECREED that Plaintiff's Partial Motion for Summary Judgment be, and hereby is, in all things GRANTED.

It is SO ORDERED.

**SIGNED this 15th day of December, 2006.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE